## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

          Plaintiff,

          v.

Jorge Silva Zugana (1),
Jose Galvan Aguilar (2), and
Mario Alberto Carranco (3)

          Defendants.

Criminal No. 05-CR-196
(DSD/SRN)


**REPORT & RECOMMENDATION**

Steven Schleicher, Esq., on behalf of Plaintiff

Leon Trawick  Esq., on behalf of Defendant Jorge Silva Zugana (1)

Paul Schneck, Esq., on behalf of Defendant Jose Galvan Aguilar (2)

Darren Borg, Esq., on behalf of Defendant Mario Alberto Carranco (3)

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on

Defendant Aguilar's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc.

No. 56).  Based on representations made by defense counsel at the motions hearing to withdraw the

remaining suppression motions, the following motions are denied as moot: Motions of Defendants

Zugana, Aguilar and Carranco to Suppress Statements, Admissions and Answers (Doc. Nos. 45, 66 &

35); Defendant Zugana's Motion to Suppress Evidence Obtained as a Result of Search and Seizure

(Doc. No. 68); Defendant Aguilar's Motion to Suppress Eyewitness Identification (Doc. No. 65); and

Defendant Carranco's Motion to Suppress Evidence Obtained from Electronic Surveillance and

Wiretapping (Doc. No. 33.)

This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28

U.S.C. § 636 and Local Rule 72.1.[1]

# I.      PROCEDURAL HISTORY

An indictment dated June 14, 2005 was filed against Defendants charging them with one count

of conspiracy for knowingly and intentionally agreeing and conspiring with each other to possess with

intent to distribute and to distribute in excess of 500 grams of methamphetamine, in violation of 21

U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  Defendants were also charged with one count of

possession with intent to distribute and for aiding and abetting and knowingly and intentionally

possessing with intent to distribute in excess of 500 grams of methamphetamine, in violation of 21

U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2.

At the criminal motions hearing, Minneapolis Police Officer Jose Gomez testified on behalf of

the Government.  No exhibits were admitted in evidence and no other witnesses testified.

Because the majority of Defendants' motions were withdrawn by counsel as moot, the only

remaining motion is Defendant Aguilar's Motion to Suppress Evidence Obtained as a Result of Search

and Seizure (Doc. No. 56) on grounds that the officers lacked probable cause to arrest Defendant

---

[1]This matter is set to be tried before the Honorable David S. Doty, United States District Court
Judge for the District of Minnesota, on August 16, 2005.  Non-dispositive motions are addressed by
the Court in a separate Order.

Aguilar.

## II.    FACTS

Minneapolis Police Officer Jose Gomez, an officer in the Narcotics Unit, testified about an undercover buy involving Defendants in May 2005.  Officer Gomez stated that a cooperating defendant provided him with a cell phone number for a person named "Jose," and the code word "corazones," to indicate an interest in purchasing methamphetamine.

On May 13, 2005, Officer Gomez phoned the number and asked for Jose.  The person who answered indicated that he was Jose.  Officer Gomez stated the code word and Jose, whom Officer Gomez later identified as Defendant Zugana, indicated that he wanted to meet him.  Officer Gomez arranged to telephone Defendant Zugana a few days later.  The initial May 13, 2005 phone call was not tape recorded.

On May 16, 2005, at approximately noon, Officer Gomez dialed the number and asked to speak to Jose.  This phone conversation was recorded.  Officer Gomez testified that the person with whom he spoke was the same person as before, because he recognized the voice.  At some point during the call, Defendant Zugana/"Jose," laughed and said something to the effect of "by the way, my name is Jorge."  Defendant Zugana and Officer Gomez agreed to meet in the Twin Cities, but Zugana stated that because he needed to arrange transportation to the Twin Cities, he would phone Officer Gomez later with more information.

At approximately 2:30 p.m., Officer Gomez received an incoming call from Zugana, indicating that he was en route to Minneapolis and that he would put a traveling companion on the phone who was more familiar with Minneapolis in order to arrange the meeting place.  The other speaker, whom

Officer Gomez could only identify as a Hispanic man, asked Officer Gomez if he was familiar with the

location of Mercado Central, to which Officer Gomez responded that he knew it was near the

intersection of Lake and Bloomington in Minneapolis.   Officer Gomez phoned Defendant Zugana

approximately fifteen minutes later to indicate that he was running late and Zugana stated that they

would wait.

When Officer Gomez arrived at Mercado Central, he found no parking in the lot, so he dialed

Defendant Zugana's number and asked if he could follow him elsewhere.  Defendant Zugana stated that

he would be outside in a couple of minutes and that he had a green Ford F150 truck in the parking lot.

Officer Gomez observed three men, whom he identified in court as Defendants Zugana, Aguilar and

Carranco, exit Mercado Central and walk toward a green Ford F150 truck.  As they walked by,

Officer Gomez nodded and said, "follow me."   Officer Gomez observed Defendant Carranco get into

the driver's seat, with Defendant Zugana in the front passenger's seat and Defendant Aguilar occupying

the back area of the extended cab pick-up.

The two vehicles proceeded to a Target store on Lake and Minnehaha in Minneapolis, where

they parked in adjacent parking stalls.  Defendant Zugana exited the pick-up truck and entered Officer

Gomez's undercover car.  According to Officer Gomez, Zugana stated that he did not have any

methamphetamine with him, because he did not know the amount which Gomez wanted to purchase.

Officer Gomez asked if he had a sample, to which Defendant Zugana responded that he thought one of

his friends in the truck had a sample.  When asked by Officer Gomez what type of methamphetamine

he had, Zugana indicated that it was "ice," or crystal methamphetamine.

Defendant Zugana stated that he had "ice" in his trailer in Gaylord, Minnesota, and suggested

4

that Officer Gomez accompany him there.  Officer Gomez replied that he did not know the area and was uncomfortable going there, therefore, he asked if there was a more "middle ground" location where they could meet.  Defendant Zugana indicated that one of his friends would know of a place, and motioned out the car window for his two companions to get into the officer's car.

Defendants Aguilar and Carranco entered the back seat of Officer Gomez's car and when Zugana asked if Aguilar had a sample, Defendant Aguilar said that he did and produced a bag with a substance that appeared to be crystal methamphetamine.  After Defendant Aguilar handed Officer Gomez the bag, he then held out a key and said "give me some of that."  A quantity of the drug was placed on the key and Officer Gomez observed Aguilar inhale it.  When Gomez asked Zugana and Aguilar if either wanted money for the sample, they nodded "no."

The men talked for a short while, then Officer Gomez turned to Defendant Carranco and asked where they should meet next.  Defendant Carranco asked if Gomez was familiar with a Mexican restaurant in Shakopee, Minnesota, near the racetrack.  Officer Gomez asked if it was called El Sabroso, Carranco agreed that it was, then provided Gomez with directions.  Defendant Zugana suggested that they meet at El Sabroso at 7:00 p.m.  Defendant Carranco then asked to follow Gomez back to Mercado Central, because he was unfamiliar with the area around the Target store.  Officer Gomez led the three Defendants back to Lake and Bloomington, then phoned Zugana, telling them they were back at Mercado Central.  Officer Gomez retained the drug sample, which tested positive for methamphetamine.

That evening, Officer Gomez was the first to arrive at El Sabroso in Shakopee, which he discovered was closed.  He called Zugana's number and suggested that they meet at a Super America

gas station located across the street from El Sabroso, and Gomez would wait in the parking lot.

Defendant Zugana stated that they were on their way.  Shortly thereafter, Officer Gomez observed the

Ford F150 pick-up truck pull into the Super America parking lot, with Carranco driving, Zugana in the

front passenger seat and Aguilar in the back.  Zugana spoke with Officer Gomez and suggested meeting

at a park down the road.  Officer Gomez said that that was too quiet and instead suggested a nearby

McDonald's parking lot.

Officer Gomez and Defendants rendezvoused at McDonald's, parking next to each other.

Officer Gomez popped open the hood of his car, giving the appearance that he was doing some work

on his engine.  Defendant Zugana suggested that they first go inside, get some food and that Officer

Gomez ask the counter server for a spare paper bag.  Officer Gomez and two of the Defendants

ordered food, Officer Gomez received an empty McDonald's bag, and then suggested that they go

outside.  Officer Gomez stated that he would get the money from a lunch box located in the trunk of his

car.  Gomez gave the empty McDonald's bag to Defendant Zugana.

At the officer's car, Officer Gomez opened the trunk and Defendant Zugana placed the

McDonald's bag in the trunk.  From this vantage point, with the trunk open, Officer Gomez testified

that he could not see Defendants Aguilar and Carranco.  Officer Gomez opened the paper bag and saw

two large-sized balls of methamphetamine.  He then gave an arrest signal and arresting officers arrived

at the scene.

## III.    DISCUSSION

Defendant Aguilar argues that officers lacked probable cause to arrest him and that any

evidence obtained following the arrest was illegally seized.  Aguilar contends that the investigation arose

6

from a tip produced by a cooperating defendant, who referred to a man named "Jose," who, in fact, turned out to have a different name – Jorge.  The mere fact that he was present, Aguilar argues, does not create probable cause sufficient to justify his arrest.  In addition, the fact that he had a small amount of drugs on his person and that he used drugs, was not enough to show that he was aware of what was occurring.

The Government argues that Defendant Aguilar's motion to suppress should be denied because there was a sufficient quantum of evidence for a reasonable police officer to believe that a crime had been committed and that Aguilar had committed it.  Specifically, the Government argues, distributing methamphetamine to a police officer constitutes a felony, which would justify arrest.  The argument that Aguilar was "just present," but was not a conspirator, is not an issue that this Court need address in this setting, the Government argues, but is an issue to be proven at trial.  Even so, by giving a police officer a sample of narcotics, a reasonable officer could conclude that Defendant Aguilar was engaged in aiding and abetting a conspiracy to distribute a controlled substance.

Officers may lawfully arrest persons without arrest warrants for any offense committed by the arrestee in the presence of a law enforcement officer, United States v. Watson, 423 U.S. 411, 418 (1976); United States v. Lewis, 183 F.3d 791, 792-94 (8th Cir. 1999), cert. denied, 528 U.S. 1163 (2000), and for any felony that an officer has probable cause to believe the arrestee has committed.  See Watson, 423 U.S. at 418, 422, n. 11.  Probable cause to make a warrantless arrest exists when police have, at the moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information and sufficient in themselves to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested.  See Beck v. Ohio, 379 U.S. 89,

91 (1964).

Here, sufficient probable cause existed upon which to arrest Defendant Aguilar.  First, Defendant Aguilar committed an offense in the presence of Officer Gomez, namely, he offered Officer Gomez a sample of illegal narcotics.  Defendant Aguilar then ingested narcotics himself, in the presence of Officer Gomez.  Those facts alone constitute sufficient probable cause for Aguilar's arrest. Moreover, a reasonable, prudent officer could believe that Defendant Aguilar, who was present with Defendants Zugana and Carranco at the various meeting points, was knowingly involved in the drug buy.  For all of these reasons, the Court recommends that Defendant Aguilar's motion to suppress be denied.

**THEREFORE, IT IS HEREBY RECOMMENDED that:**

1.  Defendant Aguilar's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 56) be **DENIED;**

2.  The motions of Defendants Zugana, Aguilar and Carranco to Suppress Statements, Admissions and Answers (Doc. Nos. 45, 66 & 35) be **DENIED AS MOOT;**

3.  Defendant Zugana's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 68) be **DENIED AS MOOT;**

4.  Defendant Aguilar's Motion to Suppress Eyewitness Identification (Doc. No. 65) be **DENIED AS MOOT;**

5.  Defendant Carranco's Motion to Suppress Evidence Obtained from Electronic Surveillance and Wiretapping (Doc. No. 33) be **DENIED AS MOOT.**

Dated: July 15, 2005

8

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by July 29, 2005, after being served with a copy thereof.  The objecting party must file with the Clerk of the Court and serve on all parties, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.